# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JOHN CHANCE GREEN,           )
                             )
       Plaintiff,         )
                             )
                             ) Case No. CIV-18-210-KEW
                             )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,     )
                             )
       Defendant.         )

## OPINION AND ORDER

Plaintiff John Chance Green (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. He has a limited education and worked in the past as a forklift driver and a semi-truck driver. Claimant alleges an inability to work beginning on October 2, 2012, due to limitations resulting from right knee injury, right knee arthritis, gout, back problems, migraine headaches, left eye amblyopia, depression, anxiety, and bipolar disorder.

## Procedural History

On October 5, 2012, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On

September 9, 2014, an Administrative Law Judge("ALJ") entered an unfavorable decision. Claimant appealed the matter, and the case was remanded by United States Magistrate Judge Steven P. Shreder on March 22, 2017. However, on September 23, 2015, Claimant protectively filed another application for a period of disability and for disability insurance benefits. He was granted a closed period of disability from September 10, 2014 through March 17, 2016, by another ALJ on October 18, 2016. On July 17, 2017, the Appeals Council remanded the case pursuant to the district court's order. In its remand order, the Appeals Council referenced the October 18, 2016 favorable decision wherein Claimant was found disabled for a closed period, and noted the decision continued to be binding unless the ALJ on remand determined the conditions for reopening were met. It ordered the ALJ to offer Claimant the opportunity for a new hearing, take any necessary action for completion of the record, and issue a new decision. (Tr. 942-43).

ALJ James Bentley conducted a hearing in McAlester, Oklahoma, on December 21, 2017, at which Claimant appeared and testified. On March 28, 2018, the ALJ entered a decision wherein he reopened the decision awarding Claimant benefits for a closed period of disability, considered the entire period from Claimant's first date of eligibility, and determined Claimant was not disabled. The decision of the ALJ represents the Commissioner's final decision for purposes of further review. 20 C.F.R. § 404.984.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider the opinion of his treating physician Dr. Don Barney, D.O.; and (2) failing to consider his strong work history in the evaluation of symptoms.

## Evaluation of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of left eye amblyopia, right knee arthritis, lumbar degenerative disc disease, cervical degenerative disc disease, gout, migraine headaches, essential hypertension, major depressive disorder (recurrent, severe, without psychosis), generalized anxiety disorder, PTSD (military service), intermittent explosive disorder traits, borderline personality disorder characteristics, alcohol use disorder (in sustained partial remission), and opioid use disorder (in sustained remission). (Tr. 758). He determined Claimant could perform light work with additional limitations. In so doing, the ALJ found Claimant could occasionally use the right lower extremity for foot controls, occasionally climb ramps and

5

stairs, and occasionally kneel. He could not climb ladders or scaffolding or crawl. Claimant could frequently, but not constantly, balance, stoop, and handle and finger with the upper extremities bilaterally. He could read ordinary newspaper or book-style print and should avoid normal workplace hazards, such as approaching vehicles, boxes left on the floor, and doors left ajar, as well as unprotected heights and dangerous moving machinery. Claimant needed a sit/stand option, defined by the ALJ "as a brief positional change from sitting to standing and vice versa," for the purposes of comfort, and with no more than one change of position every 30 minutes. Claimant did not need to leave the workstation, so he would not diminish pace or production. Claimant could understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods to complete simple and detailed work tasks with routine supervision. He could respond appropriately to occasional work-related contact with co-workers, supervisors, and the general public, and adapt to a routine work setting. (Tr. 764).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of merchandise marker, routing clerk, and collator operator, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 783-84). As a result, the ALJ concluded Claimant was not under a disability from October 2, 2012, through the date

6

of the decision. (Tr. 786).

Claimant contends the ALJ improperly considered the opinions from his treating pain management physician, Dr. Barney.[2] The ALJ summarized the treatment records from Dr. Barney in the decision. He referenced treatment notes from Dr. Barney showing that Claimant received pain management from Dr. Barney for his right knee both before and after his right knee surgery in October of 2011. (Tr. 766-67, 549-89). He noted that after his surgery, Claimant followed up on nearly a monthly basis with Dr. Barney through February of 2015. During this time period, Dr. Barney's treatment notes reflect refills of Claimant's medications and prescribing Claimant a hinge brace, TENS unit, and Biofreeze gel. (Tr. 767, 637, 653-55, 1178-98). Claimant reported to Dr. Barney in November of 2012 that he was getting good results from his pain medication. (Tr. 767, 555). He reported in November of 2013 that he was getting some relief from pain and edema with his knee brace. (Tr. 767, 651). In October and November of 2014, Dr. Barney prescribed Claimant a neuropathic pain cream, which Claimant indicated helped, and Lidoderm patches. (Tr. 767, 1186-89).

The ALJ also discussed Dr. Barney's examination findings for Claimant. He noted that tenderness in the right knee was at times

---

[2] Claimant also makes a brief reference to opinions from PT Shahan-Hale and LPC Dry. However, Claimant makes no further argument or any citation to these opinions in the record.

7

the only abnormal finding observed by Dr. Barney (Tr. 769, 1185, 1189, 1194), while on other occasions, Dr. Barney observed swelling in the right knee and restricted/decreased range of motion, but with anterior and posterior drawer signs as negative. (Tr. 769, 549-589, 636-37, 651-680, 682-85, 1178-98). He noted that when Dr. Barney saw Claimant for the last time in February of 2015, he recorded that Claimant exhibited pain when walking and favored his left knee. (Tr. 769, 1179).

When discussing the opinion evidence from Dr. Barney, the ALJ specifically referenced the handicapped parking placard application completed by Dr. Barney for Claimant in March of 2012. Dr. Barney indicated on the application that Claimant could not walk more than 200 feet without stopping to rest because of his cruciate ligament tear and chronic strain of the right knee. (Tr. 772, 1013). He also referenced the Doctor's Statement from Dr. Barney dated February 25, 2013, wherein Dr. Barney stated that Claimant was unable to work because of his knee injury and permanent eye damage. He indicated Claimant's inability to work was permanent. (Tr. 772, 609). The ALJ further referenced Dr. Barney's medical source statement from July 17, 2013, wherein Dr. Barney determined Claimant had a poor prognosis and could only walk one or two blocks, sit for 20 to 30 minutes at a time, stand for 30 to 45 minutes at a time, stand/walk less than two hours in an eight-hour workday, and sit for only two hours in an eight-hour

workday. Claimant needed to sit and stand at will, take unscheduled breaks throughout a workday, and elevating his affected leg would help. He determined claimant could occasionally lift less than ten pounds and rarely lift ten or 20 pounds. Claimant could only occasionally twist or stoop/bend and rarely crouch, squat, and climb ladders or stairs. (Tr. 772, 629-34).

In assigning "diminished weight" to Dr. Barney's above-referenced opinions, the ALJ noted that all of the opinions resulted in Claimant's being "unable to perform even sedentary work due to right knee impairment." He acknowledged Dr. Barney had "a longitudinal treating relationship" with Claimant, but he viewed Dr. Barney's opinions as inconsistent with the other evidence in the record, including the muscle testing performed by Dr. Barney on the same day he completed the medical source statement. (Tr. 637). The ALJ also determined that Dr. Barney's opinion that Claimant had a poor prognosis because he would need a total knee replacement in the future was inconsistent with the opinion of Claimant's orthopedic surgeon, who released Claimant to work in February of 2013, without any restrictions, and the opinion of Dr. Hughes in January of 2012, wherein he assessed Claimant with a 13% right lower extremity impairment for worker's compensation purposes. With regard to the information included on the handicapped parking placard application, the ALJ noted Dr. Barney's conclusion that Claimant's cruciate ligament tear and

9

chronic strain of the right knee "would not affect [his] ability to safely operate a motor vehicle under normal or adverse driving conditions." The ALJ acknowledged that Dr. Barney recorded some limitations in the right knee range of motion and tenderness and edema, but he also indicated claimant could ambulate without an assistive device. He concluded that Dr. Barney's findings showed Claimant had normal motor and sensory examinations with normal strength and no muscle atrophy, which did not support the limitations included in his opinions. (Tr. 772-73).[3]

"As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2).

As set forth herein, the ALJ included a detailed discussion of Dr. Barney's treatment records in his decision. He determined that Dr. Barney's treatment notes did not support the limitations of the medical source statement, his opinions expressed on the

---

[3] Claimant cites to the prior ALJ's decision from September 9, 2014, in several portions of his briefing when arguing the ALJ failed to properly consider Dr. Barney's opinions.

Doctor's note, and the handicapped parking placard application. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (noting opinion of treating physician may be reasonably discounted when not supported by his own treatment notes). Moreover, the ALJ discounted Dr. Barney's opinions because they were inconsistent with other medical evidence in the record. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (noting opinion of treating physician may be discounted by the ALJ when inconsistent with other medical evidence). Further, the ALJ noted the length and nature of the treatment relationship Dr. Barney had with Claimant. Finally, Dr. Barney's opinions that Claimant was unable to work were discussed by the ALJ, but they were not entitled to controlling weight as they address issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are not medical opinions); *Balthrop v. Barnhart*, 116 Fed. Appx. 929, 932-33 (10th Cir. 2004) (finding an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis or any special significance); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (indicating that an opinion on an issue reserved to the Commissioner is still evidence and cannot simply be disregarded). The Court finds no error with the ALJ's consideration of Dr. Barney's opinions.

Claimant also appears to argue that the ALJ should not have relied on evidence from the non-examining state agency physicians over the limitations determined by Dr. Barney. He asserts that almost two and a half years passed between the last agency review and the opinion offered by Dr. Barney. However, the last state agency review of the record was in June of 2013 (Tr. 173-87), which was just slightly over one month prior to the completion of the medical source statement by Dr. Barney in July of 2013. Thus, contrary to Claimant's argument, there was not a large gap in the evidence reviewed by the state agency physicians. Moreover, the ALJ did not specifically rely upon the state agency physician's opinions when assigning diminished weight to Dr. Barney's opinions. He found Dr. Barney's opinions were inconsistent with his own treatment records and inconsistent with other medical evidence, primarily the opinions of Dr. LaButti and Dr. Hughes.

Claimant further argues the ALJ should have re-contracted Dr. Barney, scheduled a consultative examination, obtained a medical expert, or requested an updated review by a state agency physician. Although the ALJ "'bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised[,]'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008), quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004), in an counseled case, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to

structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167.

The administrative record reveals that at the most recent hearing on December 21, 2017, the ALJ asked Claimant's counsel if the record was complete, and counsel agreed it was. The ALJ also noted the exhibits in the record and asked Claimant's counsel if he had any objections to the exhibits. Claimant's counsel did not, and the ALJ admitted the exhibits and made them part of the record for consideration. (Tr. 856-57). The Claimant has not demonstrated any error by the ALJ for failing to further develop the record.

### Evaluation of Symptoms

Claimant contends the ALJ's evaluation of his symptoms is deficient because the ALJ failed to account for Claimant's strong work history.

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. (Tr. 765). He determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his

13

symptoms were not entirely consistent with the evidence in the record. In making these determinations, he summarized the medical evidence, Claimant's testimony, and reports of symptoms in detail. He considered Claimant's daily activities and referenced Claimant's work history, including that he had worked at the substantial gainful level. The ALJ noted Claimant had sought work during the time he claimed to be disabled and received unemployment benefits. He further discussed Claimant's work history when he noted Claimant had worked despite having several impairments prior to his onset date. (Tr. 756-57, 765-83).

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon

which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's evaluation of Claimant's pain or other symptoms reveals that he relied upon the appropriate factors in assessing Claimant's statements and considered Claimant's work history. Consideration of work history is proper, but it is only one of several factors that bear on an ALJ's evaluation of a claimant's pain and other symptoms. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (finding work history properly considered as one of several factors bearing on claimant's credibility). The Court finds no error in the ALJ's assessment of Claimant's pain and other symptoms.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2019.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE